```
 1                  UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
 2
                    17-14009-CR-MARTINEZ/LYNCH
 3

 4
    UNITED STATES OF AMERICA,      )
 5                                 )
                PLAINTIFF,         )
 6                                 )
         VS.                       )
 7                                 )
    RALPH ROBERT JAMES SERGO,      )
 8                                 )
                DEFENDANT.         )
 9  _____)
10              (TRANSCRIPT BY DIGITAL RECORDING)
11
12          TRANSCRIPT OF INITIAL APPEARANCE HAD BEFORE THE
13  HONORABLE FRANK J. LYNCH, JR., IN FORT PIERCE, SAINT LUCIE
14  COUNTY, FLORIDA, ON FEBRUARY 1, 2017, IN THE ABOVE-STYLED
15  MATTER.
16
17
    APPEARANCES:
18
    FOR THE GOVERNMENT:   CARMEN M. LINEBERGER, A.U.S.A.
19                        101 SOUTH U.S. HIGHWAY 1, SUITE 3100
                          FORT PIERCE, FL 34950 - 772 293-0944
20
    FOR THE DEFENDANT:    ROBERT J. WATSON, ESQ.
21                        ROBERT J. WATSON, PA
                          3601 SE OCEAN BOULEVARD, SUITE 4
22                        STUART, FL 34996 - 772 288-1880
23              CARL SCHANZLEH, RPR - CM
                  CERTIFIED COURT REPORTER
24                  9960 SW 4TH STREET
                  PLANTATION, FLORIDA 33324
25                     954 424-6723
```

| | | | | | |
|---|---|---|---|---|---|
| 1 | | | | | |
| 2 | TABLE OF CONTENTS | | | | |
| 3 | WITNESSES: | DIRECT | CROSS | REDIRECT | RECROSS |
| 4 | JAMES MACEK .............................. | 9 | | 13 | 16 |
| 5 | INDEX TO EXHIBITS | | | | |
| 6 | EXHIBITS | MARKED FOR IDENTIFICATION | | RECEIVED IN EVIDENCE | |
| 7 | DESCRIPTION | PAGE | LINE | PAGE | LINE |

```
 1  (FORT PIERCE, SAINT LUCIE COUNTY, FLORIDA;  FEBRUARY 1, 2017,
 2  IN OPEN COURT.)
 3            THE COURT:  THIS MATTER IS UNITED STATES OF AMERICA
 4  VERSUS RALPH ROBERT JAMES SERGO, 17-006-FJL.
 5            I'M POINTING OUT THAT THE AGENT IS PRESENT.
 6            IF THEY WOULD COME FORWARD, PLEASE.
 7            MS. LINEBERGER:  GOOD MORNING, YOUR HONOR.  CARMEN
 8  LINEBERGER ON BEHALF OF THE GOVERNMENT.
 9            THE COURT:  GOOD MORNING, MA'AM.
10            MR. WATSON:  GOOD MORNING, JUDGE, ROBERT WATSON FOR
11  RALPH SERGO.  I HAVE ENTERED A LIMITED APPEARANCE WITH THE
12  COURT'S LEAVE.
13            THE COURT:  OKAY.  IF THE AGENT WOULD COME UP HERE,
14  PLEASE.
15            GOOD MORNING, MR. WATSON, AGAIN.  GOOD TO SEE YOU,
16  SIR.
17            MR. WATSON:  GOOD TO SEE YOU, SIR.
18            THE COURT:  OKAY.  YOU HAVE A TEMPORARY APPEARANCE.
19  DO YOU KNOW (INAUDIBLE) GO THROUGH ALL OF THAT.  WHEN DO YOU
20  KNOW WHEN IT'S GOING TO BE PERMANENT?
21            MR. WATSON:  I WILL.
22            THE COURT:  WHEN?
23            MR WATSON:  WHEN WILL I KNOW?
24            THE COURT:  YES.
25            MR. WATSON:  IF THE COURT WOULD GIVE ME 48 HOURS I'M
```

1  SURE THAT DECISION WILL BE MADE WITHIN THAT TIME.
2           THE COURT:  OKAY.  SO WE CAN SET IT FOR NEXT MONDAY.
3           MR. WATSON:  THAT WOULD BE GREAT.  YEAH.
4           THE COURT:  I'LL SET THE REPORT RE: COUNSEL FOR THE
5  23RD AT 9:30, AND THEN WE WILL GO OVER THE PERMANENT
6  APPEARANCE.
7           IF YOU ENTER A PERMANENT APPEARANCE AS TO WHETHER OR
8  NOT THAT'S ALL THE WAY THROUGH APPEAL OR JUST THROUGH TRIAL,
9  BUT WE CAN'T ADDRESS THAT YET.
10          MR. WATSON:  YES, SIR.
11          THE COURT:  OKAY.  ALL RIGHT.
12          SIR, IF YOU WOULD RAISE YOUR RIGHT HAND FOR ME,
13 PLEASE?
14          (DEFENDANT SWORN)
15          THE DEFENDANT:  YES, YOUR HONOR.
16          THE COURT:  PLEASE TELL ME YOUR FULL NAME.
17          THE DEFENDANT:  RALPH ROBERT JAMES SERGO.
18          THE COURT:  MR. SERGO, THIS IS AN INITIAL APPEARANCE
19 HEARING ON A CRIMINAL COMPLAINT WHICH HAD BEEN SIGNED AGAINST
20 YOU.  THIS HEARING IS TO ADVISE YOU OF YOUR RIGHTS, TO MAKE
21 SURE YOU UNDERSTAND THE CHARGES AGAINST YOU AND GET A COPY OF
22 THAT COMPLAINT.
23          I BELIEVE YOU HAVE RETAINED MR. WATSON TEMPORARILY TO
24 REPRESENT YOU, AND AS YOU HAVE HEARD ME TELL HIM HE HAS UNTIL
25 MONDAY TO MAKE THAT DETERMINATION OF WHETHER OR NOT HE'S GOING

1  TO PERMANENTLY REPRESENT YOU.

2             SO YOU AND YOUR FAMILY GET TOGETHER, GET THE --
3  WHATEVER YOU NEED TO DO TO GET MR. WATSON ON THE CASE BEFORE
4  NEXT MONDAY.

5             DO YOU UNDERSTAND THAT?

6             THE DEFENDANT:  YES, YOUR HONOR.

7             THE COURT:  NOW, FOR SOME REASON THIS FALLS THROUGH
8  AND YOU'RE NOT ABLE TO RETAIN MR. WATSON OR ANY OTHER ATTORNEY
9  WHEN I SEE YOU BACK HERE ON NEXT MONDAY ON THE 23RD AT 9:30 YOU
10 CAN STILL ASK ME IF YOU QUALIFY FOR COURT APPOINTED COUNSEL.

11            DO YOU UNDERSTAND THAT?

12            THE DEFENDANT:  YES, YOUR HONOR.

13            THE COURT:  OKAY.  YOU HAVE THE RIGHT TO REMAIN
14 SILENT.  IF AT ANY TIME TODAY OR IN THE FUTURE YOU GIVE UP THAT
15 RIGHT AND MAKE ANY STATEMENT, THAT STATEMENT WILL BE USED
16 AGAINST YOU.  ALSO IF YOU BEGIN MAKING A STATEMENT AND WISH TO
17 STOP YOU MAY STOP AT ANY TIME.

18            YOU MAY ALSO REFUSE TO ANSWER ANY QUESTION THAT ANYONE
19 ASKS YOU AND YOU DO NOT HAVE TO GIVE A REASON FOR REFUSING.
20 BUT IF YOU DO ANSWER ANY QUESTIONS TODAY SINCE YOU'RE UNDER
21 OATH THE ANSWERS MUST BE TRUTHFUL.

22            IF IT IS LATER DETERMINED AN ANSWER YOU GIVE IS
23 UNTRUTHFUL THAT COULD SUBJECT YOU TO ANOTHER CRIMINAL CHARGE OF
24 PERJURY OR MAKING A FALSE STATEMENT UNDER OATH.

25            DO YOU UNDERSTAND WHAT I SAID SO FAR, MR. SERGO?

```
 1              THE DEFENDANT:  YES, YOUR HONOR.
 2              THE COURT:  OKAY.  DO YOU WRITE, READ AND UNDERSTAND
 3    ENGLISH, SIR?
 4              THE DEFENDANT:  YES, YOUR HONOR.
 5              THE COURT:  HAS A COPY OF THE COMPLAINT BEEN GIVEN TO
 6    THE DEFENDANT AND COUNSEL?
 7              MS. LINEBERGER:  IT HAS, YOUR HONOR.
 8              THE COURT:  OKAY.  IF YOU CAN TELL ME THE CHARGES, THE
 9    POSSIBLE PENALTIES AND WHEN THIS IS GOING TO GO TO BEFORE THE
10    GRAND JURY, PLEASE.
11              MS. LINEBERGER:  YOUR HONOR, THE DEFENDANT IS CHARGED
12    WITH VIOLATIONS OF TITLE -- UNITED STATES CODE -- TITLE 21,
13    UNITED STATES CODE, SECTIONS 952 AND 963 INVOLVING ATTEMPTED
14    IMPORTATION OF LYSERGIC ACID DIETHYLAMIDE, ALSO KNOWN AS LSD, A
15    SCHEDULE ONE CONTROLLED SUBSTANCE, AS WELL AS THE ATTEMPTED
16    DISTRIBUTION OF THAT SUBSTANCE IN VIOLATION OF TITLE 21, UNITED
17    STATES CODE, SECTION 841(A)(1) AND 846.
18              FOR EACH OF THOSE VIOLATIONS UPON CONVICTION THE
19    DEFENDANT WOULD FACE A MANDATORY MINIMUM OF 10 YEARS UP TO
20    LIFE, SUPERVISED RELEASE OF FIVE YEARS UP TO LIFE, UP TO A 10
21    MILLION DOLLAR FINE AND A 100 SPECIAL -- $100 SPECIAL
22    ASSESSMENT UPON CONVICTION OF EITHER CHARGE.
23              HE'S ALSO IN VIOLATION OF TITLE 18, UNITED STATES
24    CODE, SECTION 926(C) INVOLVING THE POSSESSION OF A FIREARM IN
25    FURTHERANCE OF A DRUG TRAFFICKING CRIME FOR WHICH HE FACES A
```

```
 1  CONSECUTIVE TERM OF IMPRISONMENT OF FIVE YEARS UP TO LIFE, A
 2  $250,000 FINE, UP TO FIVE YEARS SUPERVISED RELEASE AND A $100
 3  SPECIAL ASSESSMENT.
 4          I'M SORRY, THAT'S FIVE YEAR UP TO LIFETIME SUPERVISED
 5  RELEASE AND A $100 SPECIAL ASSESSMENT UPON CONVICTION.
 6          THE COURT:  WHEN IS THIS GOING TO THE GRAND JURY?
 7          MS. LINEBERGER:  IT SHOULD GO TO THE GRAND JURY ON OR
 8  BEFORE FEBRUARY 1ST.
 9          THE COURT:  SIR, DO YOU UNDERSTAND THE CHARGES AGAINST
10  YOU IN THE COMPLAINT?
11          THE DEFENDANT:  YES, YOUR HONOR.
12          THE COURT:  DO YOU UNDERSTAND THE POSSIBLE MAXIMUM
13  PENALTIES YOU'RE FACING SHOULD YOU BE CONVICTED OF THOSE
14  CHARGES?
15          THE DEFENDANT:  YES, YOUR HONOR.
16          THE COURT:  OKAY.  I'M GOING TO SET AN ARRAIGNMENT IN
17  YOUR CASE FOR -- IT WOULD BE FEBRUARY 1ST WOULD BE 14 DAYS.  SO
18  WE WILL SET THE ARRAIGNMENT FOR A PRELIMINARY HEARING FOR
19  FEBRUARY 1ST AT 9:30.
20          IF THERE IS AN INDICTMENT AT THAT TIME YOUR ATTORNEY
21  WILL ENTIRE A NOT GUILTY PLEA SO I CAN SET THE CASE FOR TRIAL.
22  IF THERE IS NO INDICTMENT THEN I'LL CONDUCT A PRELIMINARY
23  HEARING AT THAT TIME TO DETERMINE IF THERE IS PROBABLE CAUSE TO
24  PROCEED.
25          DO YOU UNDERSTAND THAT, SIR?
```

1          THE DEFENDANT:  YES, YOUR HONOR.

2          THE COURT:  OKAY.  WHAT IS THE GOVERNMENT SEEKING IN

3  THE WAY OF BOND?

4          MS. LINEBERGER:  PRETRIAL DETENTION BASED ON THE

5  STATUTORY PRESUMPTION, RISK OF FLIGHT, DANGER TO THE COMMUNITY.

6          I HAVE SPECIAL AGENT JAMES MACEK FROM THE DEPARTMENT

7  OF HOMELAND SECURITY HERE FOR CROSS-EXAMINATION, YOUR HONOR.

8          THE COURT:  OKAY.  MR. WATSON, ARE YOU READY TO

9  PROCEED TODAY OR DO YOU NEED MORE TIME?

10         MR. WATSON:  I'M READY TO PROCEED.

11         THE COURT:  OKAY.  ALL RIGHT.

12         WHY DON'T YOU HAVE A SEAT, MR. SERGO.

13         THE GOVERNMENT IS LOOKING TO HOLD YOU WITHOUT A BOND

14  IN THIS CASE.  SO I HAVE TO HAVE A HEARING.

15         MR. WATSON, YOU KNOW MY POLICY.  ANY OBJECTION TO THE

16  USING THE COMPLAINT AND THE AFFIDAVIT TO SERVE AS A PROFFER FOR

17  DETENTION SO I DON'T HAVE TO GO OVER ALL OF THAT AGAIN?

18         MR. WATSON:  NO OBJECTION --

19         THE COURT:  OKAY.

20         (BOTH TALKING AT THE SAME TIME)

21         MR. WATSON:  -- TO THE COMPLAINT.

22         THE COURT:  ALL RIGHT.  JUST FOR THE PURPOSES OF THIS

23  HEARING.  OKAY.

24         AND DO YOU WISH TO EXAMINE THE AGENT WHO IS PRESENT?

25         MR. WATSON:  I DO.

```
 1            THE COURT:  OKAY.
 2            STEP FORWARD, PLEASE.
 3            IF YOU WOULD RAISE YOUR RIGHT HAND FOR ME, PLEASE.
 4            (WITNESS SWORN)
 5            THE WITNESS:  YES, SIR.
 6            THE COURT:  PLEASE HAVE A SEAT, AND ONCE YOU'RE SEATED
 7   STATE YOUR FULL NAME AND SPELL YOUR LAST NAME FOR THE RECORD,
 8   PLEASE.
 9            THE WITNESS:  JAMES MACEK, M-A-C-E-K.
10            THE COURT:  MR. WATSON?
11            MR. WATSON:  THANK YOU.
12                           JAMES MACEK,
13   BEING DULY SWORN, WAS EXAMINED AND TESTIFIED AS FOLLOWS:
14                        CROSS EXAMINATION
15   BY MR. WATSON:
16   Q.  GOOD MORNING, AGENT MACEK.
17   A.  GOOD MORNING.
18   Q.  IS MY UNDERSTANDING CORRECT THAT THIS INVESTIGATION
19   RESULTED FROM AN INTERCEPTED PACKAGE THAT WAS POSTED THROUGH
20   THE POSTAL SERVICE OR THROUGH SOME OTHER CARRIER?
21   A.  YES.
22   Q.  AND THERE WAS NO PRIOR INTELLIGENCE ON MR. SERGO.  HE WAS
23   NOT ON ANYONE'S RADAR, CORRECT?
24   A.  THERE WAS PRIOR INFORMATION RECEIVED BY SAINT LUCIE COUNTY
25   SHERIFF'S OFFICE IN ADDITION THAT MR. SERGO WAS INVOLVED IN
```

1  NARCOTICS.

2  Q.  NARCOTICS BEING WHAT?

3  A.  NARCOTICS DISTRIBUTION, SPECIFICALLY LSD.

4  Q.  OKAY.  AND THAT INFORMATION CAME IN WHAT FORM?

5  A.  THEY RECEIVED THAT INFORMATION FROM A SOURCE.

6  Q.  BUT THAT HAD NOTHING TO DO WITH THIS INVESTIGATION,

7  CORRECT?

8       I MEAN IN THE SENSE THAT WHAT PROMPTED THE SEARCH

9  WARRANT HERE WAS THE INTERCEPTION OF THE PACKAGE, CORRECT?

10 A.  COUPLED WITH THE INFORMATION FROM THE SAINT LUCIE COUNTY

11 SHERIFF'S OFFICE, YES.

12 Q.  AND IN INVESTIGATING THIS CASE YOU DETERMINED THAT

13 MR. SERGO HAD NEVER BEEN ARRESTED BY LAW ENFORCEMENT FOR ANY

14 REASON, CORRECT?

15 A.  THAT IS CORRECT.

16 Q.  AND THAT HE HAD A LEGITIMATE RETAIL BUSINESS IN WHICH

17 JEWELRY AND CLOTHING ARE SOLD WHICH IS IN JENSEN BEACH,

18 FLORIDA.

19 A.  HIS WIFE HAS A BUSINESS IN JENSEN BEACH, FLORIDA, YES.

20 Q.  OKAY.  AND YOU UNDERSTAND THAT THEY OPERATE THAT TOGETHER?

21 A.  I UNDERSTAND THAT HE HELPS HER WITH IT BASED ON HIS

22 STATEMENTS.

23 Q.  ALL RIGHT.  THE PACKAGE THAT WAS INTERCEPTED HAD A MATERIAL

24 BELIEVED TO BE LSD, CORRECT?

25 A.  THAT IS CORRECT, SIR.

1  Q.  AND THE FORM OF IT WAS WHAT, IN BLOTTER, OR LIQUID, OR WHAT
2  WAS THE FORM?
3  A.  IT WAS IN A GRANULAR POWDER FORM.
4  Q.  AND THE WEIGHT OF THAT WAS WHAT?
5  A.  IT WAS PACKAGED 7.94 GRAMS.
6  Q.  ALL RIGHT.  AND NO OTHER CONTRABAND IN THAT PACKAGE,
7  CORRECT?
8  A.  CORRECT.
9  Q.  ALL RIGHT.  AND IN EXECUTING THE SEARCH WARRANT THERE WAS
10 MARIJUANA AND PARAPHERNALIA BUT YOU WERE PRESENT DURING THE
11 EXECUTION OF THE SEARCH WARRANT, CORRECT?
12 A.  YES, SIR.
13 Q.  AND THERE WERE -- IN ADDITION TO MARIJUANA AND
14 PARAPHERNALIA THERE WERE MINUTE AMOUNTS OF MATERIAL THAT MAY BE
15 LSD, FAIR TO SAY?
16 A.  THERE WERE SEVERAL CONTAINERS THAT CONTAINED SUBSTANCE.  I
17 DON'T HAVE AN EXACT WEIGHT ON IT DUE TO THE TOXICITY OF THE --
18 POSSIBLE TOXICITY OF SUBSTANCE TO SEPARATE IT FROM THE
19 CONTAINER.  BUT THERE WERE SEVERAL CONTAINERS THAT CONTAINED A
20 SUBSTANCE TESTING -- FIELD TESTING POSITIVE FOR LSD, YES.
21 Q.  OKAY.  AND THESE WERE RESIDUE AMOUNTS IN THESE CONTAINERS?
22 A.  THERE WAS SUBSTANCE IN THERE.  IN ONE CONTAINER IN WHICH I
23 DID SEE THERE WAS MORE THAN RESIDUE AMOUNT.
24 Q.  OKAY.  THE LABORATORY -- DID IT APPEAR THAT THERE WAS ANY
25 LABORATORY THERE AT THE RESIDENCE?

1  A.  WELL --

2  Q.  IS THAT FAIR?

3  A.  I DID NOT SEE A LABORATORY TO SPEAK OF.  THERE WERE ITEMS

4  CONDUCIVE WITH THE PRODUCTION OF LSD TABS, I GUESS YOU COULD

5  CALL THEM.

6  Q.  WHERE --

7  A.  SHEETS, BLOTTER SHEETS.

8  Q.  OKAY.  WHERE THE LSD MATERIAL WOULD BE PUT ON PAPER --

9  A.  RIGHT.

10 Q.  OKAY.  BUT AS FAR AS THE MANUFACTURE OF LSD THERE WASN'T

11 ANYTHING INDICATING BEAKERS, OR CHEMICALS, OR THINGS LIKE THAT,

12 FAIR?

13 A.  NO.  THERE WAS NOTHING LIKE THAT.

14 Q.  ALL RIGHT.  AND AS FAR AS ANY INTELLIGENCE INFORMATION THAT

15 WAS IN YOUR POSSESSION THERE CERTAINLY WASN'T ANYTHING THAT

16 ROSE THE PROBABLE CAUSE TO ARREST, FAIR?

17 A.  I --

18 Q.  OTHER THAN THIS INVESTIGATION.  YOU HAD INDICATED THAT

19 THERE WAS SOME INTELLIGENCE THAT HAD BEEN RECEIVED BY SAINT

20 LUCIE.

21 A.  CORRECT.

22 Q.  RIGHT.  AS YOU SIT HERE TODAY YOU DON'T HAVE ANYTHING TO

23 TELL THE MAGISTRATE THAT THERE COULD BE OTHER ARRESTS BASED ON

24 PROBABLE CAUSE ARISING FROM THAT OTHER INTELLIGENCE, FAIR?

25 A.  (NO RESPONSE)

1  Q.  IN OTHER WORDS, THIS IS THE ONLY CASE YOU ANTICIPATE

2  AGAINST MR. SERGO AT THIS TIME.

3  A.  AT THIS TIME, YES.

4  Q.  OKAY.  ALL RIGHT.

5         MR. WATSON:  I DON'T HAVE ANY OTHER QUESTIONS, JUDGE.

6         THE COURT:  MISS LINEBERGER, ANYTHING ON THAT, MA'AM?

7         MS. LINEBERGER:  JUST BRIEFLY.

8                    REDIRECT EXAMINATION

9  BY MS. LINEBERGER:

10 Q.  APPROXIMATELY -- WHAT WAS THE APPROXIMATE WEIGHT OF THE

11 SUBSTANCE THAT YOU WERE ABLE TO WEIGH IN THE HOUSE?

12 A.  IN THE HOUSE THERE WAS A PLASTIC BAG THAT CONTAINED A

13 SUBSTANCE TESTING POSITIVE FOR LSD WHICH WEIGHED APPROXIMATELY

14 1.1 GRAM.  THERE WERE TWO GLASS VILE JARS THAT CONTAINED A

15 SUBSTANCE TESTING POSITIVE FOR LSD.  THE JARS WERE RESPECTIVELY

16 30 -- ROUGHLY 35 TO 36 GRAMS BUT THAT'S INCLUDING THE WEIGHT OF

17 THE JAR.

18 Q.  DID YOU FIND A BAGGIE OF A GRAY SUBSTANCE?

19 A.  A SMALL PLASTIC BAG --

20 Q.  YES.

21 A.  -- THAT WEIGHED 1.1 GRAM, YES.

22 Q.  OKAY.  AND HOW MUCH DID THE SUBSTANCE WEIGH THAT YOU GOT

23 FROM THE POST OFFICE?

24 A.  APPROXIMATELY 85 GRAMS.

25 Q.  AND THAT WAS ALSO LSD, CORRECT?

1  A.  IT FIELD TESTED FOR LSD.

2  Q.  HAD YOU NOT INTERCEPTED THAT PACKAGE WOULD IT HAVE LEFT THE
3  COUNTRY?

4  A.  YES.

5  Q.  BOUND FOR MEXICO.

6  A.  CORRECT.

7  Q.  BESIDES THE RECEIPT FOR THAT PACKAGE THAT HSI AND POSTAL
8  WERE ABLE TO INTERCEPT, WERE THERE OTHER RECEIPTS FROM A POST
9  OFFICE INDICATING PACKAGES HAD BEEN MAILED?

10 A.  YES.

11 Q.  AND WHERE WERE THEY FOUND?

12 A.  IN THE VAN.

13 Q.  DRIVEN BY THE DEFENDANT?

14 A.  CORRECT.

15 Q.  WAS THE FIREARM IN THE VAN THE ONLY FIREARM SEIZED FROM THE
16 DEFENDANT OR HIS PROPERTY?

17 A.  NO.

18 Q.  WHAT OTHER FIREARMS WERE SEIZED?

19 A.  THERE WERE SEVERAL REVOLVERS.  THERE WERE TWO ADDITIONAL
20 GLOCK HANDGUNS AND THERE WAS AN M4 STYLE LONG RIFLE.

21 Q.  IN THE SAME RESIDENCE AS THE CONTROLLED SUBSTANCES?

22 A.  YES.

23 Q.  HAVE YOU BEEN ABLE TO DETERMINE WHETHER OR NOT THE BUSINESS
24 CLAIMED BY THE DEFENDANT AND HIS WIFE TO OPERATE IN JENSEN
25 BEACH IS IN FACT A LEGITIMATE BUSINESS AND NOT A RUSE FOR THE

1  MAILING OF LSD OUT OF THE COUNTRY?

2  A.  NO.

3  Q.  WERE THERE PRIOR PACKAGES INTERCEPTED FROM RESIDENCES OR

4  MAILINGS TO THE DEFENDANT PRIOR TO AUGUST OF 2016?

5  A.  YES.

6  Q.  AND WHAT WAS THAT SUBSTANCE?

7  A.  ECSTASY.

8  Q.  HAVE YOU BEEN ABLE TO DETERMINE WHETHER THE CORPORATION

9  LABOW, LLC, ACTUALLY DOES LEGITIMATE BUSINESS IN THE STATE OF

10 FLORIDA?

11 A.  NO.

12 Q.  DID YOU FIND ANY ADDITIONAL RECEIPTS INDICATING PACKAGES

13 HAD BEEN MAILED TO THE SAME INDIVIDUAL IN MEXICO AS THE PACKAGE

14 THAT YOU INTERCEPTED?

15 A.  YES.

16 Q.  HOW LONG DID THE DEFENDANT CLAIM HE HAD BEEN DOING THIS

17 TYPE OF BUSINESS?

18 A.  APPROXIMATELY THREE TO FOUR YEARS.

19 Q.  AND THAT WAS AFTER BEING READ AND ADVISED OF HIS MIRANDA

20 WARNINGS, CORRECT?

21 A.  YES.

22          MS. LINEBERGER:  NO FURTHER QUESTIONS.

23          THE COURT:  YOU SAID OTHER PACKAGES INVOLVING ECSTASY,

24 WERE THOSE INBOUND OR OUTBOUND PACKAGES?

25          THE WITNESS:  THAT WAS INBOUND.

```
 1            THE COURT:  OKAY.  MEANING ON THE WAY TO MR. SERGO.
 2            THE WITNESS:  YES.
 3            THE COURT:  ALL RIGHT.
 4       MR. WATSON, ANYTHING ON ANY OF THOSE QUESTIONS, SIR?
 5            MR. WATSON:  JUST TO FOLLOW UP.
 6                     RECROSS EXAMINATION
 7  BY MR. WATSON:
 8  Q.  THERE IS AN INBOUND PACKAGE THAT HAD 7.9 GRAMS OF MATERIAL,
 9  CORRECT?
10  A.  YES, SIR.
11  Q.  ALL RIGHT.  AND THE OUTBOUND PACKAGE WAS OUTBOUND TO
12  MEXICO, CORRECT?
13  A.  THAT IS CORRECT, SIR.
14  Q.  ALL RIGHT.  AND THE WEIGHT, IS THAT A NET WEIGHT ON THE
15  OUTBOUND PACKAGE OR THE WEIGHT OF THE ENTIRE PACKAGE?
16  A.  THAT WAS THE INTERIOR ENVELOPE.  IT WAS LIKE A HEAT SEAL.
17  BECAUSE OF THE TYPE OF SUBSTANCE IT WAS NOT REMOVED FROM THAT
18  HEAT SEAL --
19  Q.  OKAY.
20  A.  -- SO IT WOULD BE A PACKAGED WEIGHT OF 80 -- ROUGHLY 85
21  GRAMS.
22  Q.  INCLUDING PACKAGING.
23  A.  YES, SIR.
24  Q.  ALL RIGHT, SIR.
25            MR. WATSON:  I DON'T HAVE ANY OTHER QUESTIONS.
```

1     THE COURT: ALL RIGHT.

2     ANYTHING ON THAT, MISS LINEBERGER?

3     MS. LINEBERGER: NO, YOUR HONOR. THANK YOU.

4     THE COURT: THANK YOU, SIR.

5     YOU CAN STEP DOWN.

6     THE WITNESS: THANK YOU.

7     THE COURT: MR. WATSON, YOU CAN PROFFER ANY WITNESSES
8  OR EVIDENCE YOU WISH.

9     MR. WATSON: I WOULD, JUDGE.

10     I WOULD PROFFER THAT MR. SERGO'S MOTHER AND FATHER,
11  RALPH AND DINA ARE PRESENT IN THE COURTROOM, AND HIS WIFE
12  JASMINE.

13     I WOULD PROFFER THAT JASMINE AND RALPH ACTUALLY GOES
14  BY ROBBY OPERATED THE BUSINESS ON JENSEN BEACH BOULEVARD, WHICH
15  IS ENGAGED IN THE LEGITIMATE SALE OF JEWELRY AND CLOTHING
16  ITEMS. IT HAS BEEN IN BUSINESS FOR SOME TIME ON JENSEN BEACH
17  BOULEVARD.

18     THAT MR. SERGO WOULD CERTAINLY SURRENDER HIS PASSPORT
19  IF PERMITTED BOND IN ANY FORM, AND THAT HE HAS BEEN A
20  CONTINUOUS RESIDENT OF THE STATE OF FLORIDA FOR 18 YEARS,
21  GRADUATING FROM JENSEN BEACH HIGH SCHOOL IN MARTIN COUNTY,
22  FLORIDA, AND HAVING ATTENDED AND I BELIEVE COMPLETED SANTA FE
23  COMMUNITY COLLEGE IN GAINESVILLE, FLORIDA.

24     HE HAS BEEN EMPLOYED WITH HIS PARENTS BUSINESS DINA
25  CAFE ON JENSEN BEACH BOULEVARD PRIOR TO HIS OPENING HIS RETAIL

1 STORE. HE HAS A ONE AND A HALF YEAR OLD DAUGHTER AND HIS WIFE
2 JASMINE IS PRESENTLY PREGNANT.
3     THE COURT: THANK YOU, SIR.
4     MR. SERGO, BASED UPON THE PRESUMPTION I'M GOING TO
5 DETAIN YOU AND HOLD YOU WITHOUT BOND AS A RISK OF FLIGHT AND A
6 DANGER TO THE COMMUNITY BASED UPON THE EVIDENCE I HAVE
7 RECEIVED, THE TESTIMONY AND ALSO THE FACTS SET FORTH IN THE
8 AFFIDAVIT.
9     AS I ALLUDED TO THERE IS A PRESUMPTION IN FEDERAL
10 COURT THAT YOU NOT GET A BOND, AND THAT'S A REBUTTABLE
11 PRESUMPTION. AND I'M FINDING THAT'S NOT BEEN REBUTTED BASED
12 UPON THE TOTALITY OF THE EVIDENCE.
13     I HAVE TAKEN INTO CONSIDERATION YOUR FOLKS BEING HERE
14 AS WELL AS YOUR WIFE AND YOUR INVOLVEMENT IN THE COMMUNITY HERE
15 BOTH IN YOUR BUSINESS AND YOUR LIVING HERE, BUT THAT DOES NOT
16 OVERCOME THE PRESUMPTION, ESPECIALLY WHEN FIREARMS ARE INVOLVED
17 AND FIREARMS ARE LOCATED AT OR ABOUT THIS TYPE OF ACTIVITY, AND
18 IN A POST-MIRANDA INTERVIEW STATING IN CONDUCTING THIS TYPE OF
19 BUSINESS FOR THREE TO FOUR YEARS.
20     SO I WILL DETAIN YOU AND I'LL GET A WRITTEN DETENTION
21 ORDER OUT AS SOON AS I CAN. IT WOULD BE TODAY.
22     MR. WATSON, IN RESPECT TO THE REPORT RE: COUNSEL. IF
23 YOU ARE RETAINED YOU CAN -- YOU CAN FILE A PERMANENT APPEARANCE
24 BEFORE NEXT MONDAY AND YOU DON'T HAVE TO SHOW UP.
25     MR. WATSON: THANK YOU.

1 THE COURT: IF THAT'S AN ISSUE STILL AND IT HASN'T
2 BEEN RESOLVED THEN --
3 MR. WATSON: OKAY.
4 THE COURT: -- I WANT YOU HERE --
5 MR. WATSON: YES, SIR.
6 (BOTH TALKING AT THE SAME TIME)
7 THE COURT: SO IF YOU ARE PERMANENTLY RETAINED JUST
8 FILE THAT NOTICE. AS SOON AS I GET IT MISS GRIFFIN-ARNOLD WILL
9 CANCEL THAT HEARING SO YOU DON'T HAVE TO SHOW UP FOR THAT SINCE
10 THE ARRAIGNMENT IS NOT GOING TO BE UNTIL FEBRUARY 1ST.
11 MR. WATSON: THANK YOU, JUDGE.
12 THE COURT: OKAY. VERY GOOD.
13 ANYTHING ELSE ON MR. SERGO'S MATTER?
14 MS. LINEBERGER: NO, YOUR HONOR. THANK YOU.
15 MR. WATSON: NOT FROM ME. THANK YOU.
16 THE COURT: THANK YOU, SIR.
17 MR. WATSON: THANK YOU.
18 - - -
19
20
21
22
23
24
25

C E R T I F I C A T E

UNITED STATES OF AMERICA

SOUTHERN DISTRICT OF FLORIDA

I, CARL SCHANZLEH, OFFICIAL COURT REPORTER OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA, DO HEREBY CERTIFY THAT THE FOREGOING 19 PAGES CONSTITUTE A TRUE TRANSCRIPT OF THE PROCEEDINGS HAD BEFORE THE SAID COURT HELD IN THE CITY OF PORT PIERCE, FLORIDA, IN THE MATTER THEREIN STATED.

IN TESTIMONY WHEREOF, I HEREUNTO SET MY HAND ON THIS 13TH DAY OF JANUARY 2018.

/S/CARL SCHANZLEH
CARL SCHANZLEH, RPR-CM
CERTIFIED COURT REPORTER
9960 SW 4TH STREET
PLANTATION, FL 33324
TELEPHONE 954 424-6723