```
                 UNITED STATES DISTRICT COURT
                 SOUTHERN DISTRICT OF FLORIDA
                     FORT PIERCE DIVISION
                  CASE NO. 17-14009-CR-JEM


UNITED STATES OF AMERICA,

            Plaintiff,

    vs.
                                       Fort Pierce, Florida
                                       June 26, 2017
RALPH ROBERT JAMES SERGO,              Pages 1-20

            Defendant.
_____


           TRANSCRIPT OF CHANGE OF PLEA HEARING
         BEFORE THE HONORABLE JOSE E. MARTINEZ
              UNITED STATES DISTRICT JUDGE


APPEARANCES:

FOR THE PLAINTIFF:
                       United States Attorney's Office
                       BY:  CARMEN LINEBERGER, A.U.S.A.
                       101 South US Highway 1
                       Suite 3100
                       Fort Pierce, Florida 34950


FOR THE DEFENDANT:
                       BY:  ROBERT B. MEADOWS, ESQ.
                       2145 14th Avenue
                       Suite 24
                       Vero Beach, Florida 32960



REPORTED BY:           DAWN M. SAVINO, RPR
                       Official Court Stenographer
                       400 N. Miami Avenue, 10S03
                       Miami, Florida  33128
                       Telephone: 305-523-5598
```

PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
TRANSCRIPT PRODUCED BY COMPUTER

```
 1                      P-R-O-C-E-E-D-I-N-G-S
 2              COURTROOM DEPUTY:  Case number
 3   17-14009-criminal-Martinez, United States of America versus
 4   Ralph Robert James Sergo.
 5              Counsel, please state your appearance.
 6              MS. LINEBERGER:  Good afternoon, Your Honor.  Carmen
 7   Lineberger on behalf of the Government.
 8              THE COURT:  Good afternoon, Ms. Lineberger.
 9              MR. MEADOWS:  Good afternoon, Your Honor.  Bob Meadows
10   on behalf of the Defendant, Mr. Sergo.
11              THE COURT:  Good afternoon, Mr. Meadows.
12              Mr. Sergo, it's my understanding that you desire to
13   change your plea of not guilty to guilty; is that correct?
14              THE DEFENDANT:  Yes, Your Honor.
15              THE COURT:  Please stand and be sworn.
16              (Defendant placed under oath)
17              THE COURT:  Please be seated.
18              I want to advise you, Mr. Sergo, that you're now under
19   oath, and if you answer any questions falsely, your answers may
20   later be used against you in a separate prosecution for perjury.
21   Perjury is a separate offense, but a very serious one, sometimes
22   more serious than the underlying offense.
23              Do you understand that?
24              THE DEFENDANT:  Yes, Your Honor.
25              THE COURT:  I'm going to ask you a series of questions
```

```
 1    to make sure that you understand these proceedings.  It's very
 2    important that if you do not understand the question, you don't
 3    answer it.  You stop, you ask your lawyer, you ask me, between
 4    the two of us, I'm sure we'll be able to explain everything to
 5    your complete satisfaction so that you fully understand it.
 6              On the other hand, if you do answer a question, I would
 7    assume that you understood it, and I believe that anybody
 8    reading the record that's being made of these proceedings at a
 9    later time would be within their rights to assume that if you
10    answered a question, you understood it.
11              So in short, if you don't understand, stop, don't
12    answer.
13              Do you understand what I just said?
14              THE DEFENDANT:  Yes, Your Honor.
15              THE COURT:  Please tell me your full name.
16              THE DEFENDANT:  Ralph Robert James Sergo.
17              THE COURT:  What is your age?
18              THE DEFENDANT:  23.
19              THE COURT:  What is the extent of your formal
20    education?
21              THE DEFENDANT:  I went to high school, I have my high
22    school degree.  Also went to college at a community college here
23    in Fort Pierce, as well as I went to a community college in
24    Gainesville.
25              THE COURT:  And what is the -- have you ever been
```

```
 1   treated for any mental illness?
 2         THE DEFENDANT:  No.
 3         THE COURT:  Have you ever been treated for any drug
 4   addiction?
 5         THE DEFENDANT:  No.
 6         THE COURT:  Are you presently under the influence of
 7   any type of drug, medication or alcoholic beverage any kind?
 8         THE DEFENDANT:  No.
 9         THE COURT:  Have you received a copy of the indictment
10   pending against you; that is, the written charges?
11         THE DEFENDANT:  Yes, sir.
12         THE COURT:  Have you had the opportunity to fully
13   discuss these charges and the case in general with your
14   attorney?
15         THE DEFENDANT:  Yes, sir.
16         THE COURT:  Are you fully satisfied with the
17   representation and advice given to you in this case by your
18   attorney?
19         THE DEFENDANT:  Yes, sir.
20         THE COURT:  Counsel, are you satisfied that your client
21   understands these proceedings?
22         MR. MEADOWS:  Yes, Your Honor.
23         THE COURT:  Mr. Sergo, there are certain rights that
24   you waive, or give up, by entering a plea of guilty.  I'm not
25   suggesting there's anything wrong with doing that; in fact,
```

often it's the best thing to do after you've had the opportunity to discuss it with your lawyer and get his advice.  But I don't want somebody at a later time to come in and say well, he didn't know -- for example, he didn't know he had a right to a trial by jury, or he didn't know he could have witnesses testify for him. So I'm going to go through some of these rights with you now and make sure that you understand that you are waiving them, or giving them up, by entering a plea of guilty.

For example, do you understand that you have the right to plead not guilty to any offense charged against you and to persist in that plea of not guilty as long as you want?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand that you would have the right to a trial by jury, during which you would also have the right to the assistance of counsel for your defense?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand that you have the right to see and hear all the witnesses against you and have them cross-examined in your defense?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you understand that you have the right not to testify, but that you may voluntarily elect to testify in your own defense, but that only can you make that decision; not your lawyer, not your family, not your friends, not your codefendants, only you?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that you have the right to the issuance of subpoenas, or compulsory process, to compel the production of persons and objects here for the purpose of your defense?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that you may have witnesses testify in your defense?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that by entering a plea of guilty, if I accept that plea, there will be no trial, and you will have waived, or given up, your right to a trial, as well as all the other rights associated with a trial, some of which I have just described to you?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that the offense to which you are pleading guilty is a felony?

THE DEFENDANT: Yes, sir.

THE COURT: If I accept your plea, you will be adjudged guilty of a felony, and such adjudication may deprive you of valuable civil rights such as the right to vote, the right to hold public office, the right to serve on a jury, the right to possess any kind of firearm and if you are an alien, that you may be subject to deportation.

THE DEFENDANT: Yes, sir.

 THE COURT: Would the Government please advise me of the maximum penalty provided by law, and any mandatory minimum penalty as to the count or counts to which the Defendant is pleading guilty.

 MS. LINEBERGER: Your Honor, as to Count 1, the Court must impose a mandatory minimum sentence of five years, up to the statutory maximum term of 40 years imprisonment, followed by a term of supervised release of four years up to life. In addition to any term of imprisonment and supervised release, the Court may impose a fine up to $5 million.

 As to Counts 2 and 4, the Court must impose a mandatory minimum sentence of ten years, up to the statutory maximum term of life imprisonment, followed by a term of supervised release of five years up to life. In addition to a term of imprisonment and supervised release, the Court may impose a fine of up to $8 million.

 As to Count 3, the Court must impose a mandatory minimum sentence of five years, up to the statutory maximum term of life imprisonment, consecutive to any other sentence imposed, followed by a term of imprisonment -- I'm sorry, followed by a term of supervised release of five years up to life. In addition to a term of imprisonment and supervised release, the Court may impose a fine of up to $250,000.

 As to Count 5, the Court must impose a mandatory minimum sentence of 25 years, up to the statutory maximum term

 1   of imprisonment, consecutive to any other sentence imposed,
 2   followed by a term of supervised release of five years up to
 3   life.  In addition to any term of imprisonment and supervised
 4   release, the Court may impose a fine of up to $250,000.  In
 5   addition, there's a special assessment in the amount of $500 for
 6   each of the -- I'm sorry. $100 for each of the five counts which
 7   would total a $500 special assessment.
 8           THE COURT:  All right, sir.  You heard what the maximum
 9   sentence was.  Do you understand that's what you're imposing
10   yourself to with your plea of guilty?
11           THE DEFENDANT:  Yes, Your Honor.
12           THE COURT:  The United States Sentencing Commission has
13   issued advisory guidelines for judges to consider in determining
14   an appropriate sentence in a criminal case.  Have you and your
15   attorney talked about how the sentencing guidelines might apply
16   to your case?
17           THE DEFENDANT:  Yes, Your Honor.
18           THE COURT:  Do you also understand that after it's been
19   determined what guidelines apply, I have the authority to impose
20   a sentence that is more severe, or less severe, than the
21   sentence called for by the guidelines?
22           THE DEFENDANT:  Yes, Your Honor.
23           THE COURT:  Do you understand that parole has been
24   abolished in the federal system?
25           THE DEFENDANT:  Yes, Your Honor.

             THE COURT:  Would the Government please summarize the
counts of the indictment to which the Defendant is pleading, and
state the elements of each crime?

             MS. LINEBERGER:  Yes, Your Honor.  Count 1 charges that
on or about October 11, 2016 in St. Lucie County, the Defendant
did knowingly and intentionally attempt to import into the
United States one gram or more of a mixture and substance
containing a detectable amount of Lysergic Acid Diethlyamide,
also known as LSD, which is a Schedule 1 controlled substance.
With regard to "attempt", the Government must prove beyond a
reasonable doubt the Defendant knowingly intended to commit the
crime.  Count 1 involves importation.  And Number 2, that the
Defendant's intent was strongly corroborated by his taking a
substantial step toward committing the crime.  A substantial
step is an important action leading up to the committing of an
offense, not just an inconsequential act.  It must be more than
simply preparing, it must be an act that would normally result
in committing the offense.

             Count 2 charges on or about January 12, 2017 in St.
Lucie County, the Defendant did knowingly and intentionally
possess with intent to manufacture and distribute a controlled
substance.  It is alleged that that substance involved ten grams
or more of a mixture and substance containing a detectable
amount of Lysergic Acid Diethlyamide, also known as LSD, a
Schedule 1 controlled substance.  With regard to possession with

```
 1      intent to manufacture and distribute, the Defendant -- Number 1,
 2      the Government would have to prove the Defendant knowingly
 3      possessed LSD.  Number 2, the Defendant intended to possess with
 4      intent to manufacture and distribute LSD.  Number 3, the weight
 5      of the LSD for this particular count was ten grams or more.  And
 6      "intended to distribute" is a plan to deliver possession of a
 7      controlled substance to someone else, even if nothing of value
 8      is exchanged.
 9              Count 3 involves on January 17, 2017 in St. Lucie and
10      Martin Counties, the Defendant did knowingly carry a firearm
11      during and in relation to a drug trafficking crime, and did
12      knowingly possess a firearm in furtherance of a drug trafficking
13      crime which is a felony prosecutable in a court of the United
14      States.  And specifically referring to Count 2 of the
15      indictment, the Government would have to prove that the
16      Defendant knowingly possessed a firearm and Number 2, it was in
17      furtherance of any drug trafficking crime for which he could be
18      prosecuted in a court of the United States, or that it was
19      carried during and in relation to a drug trafficking crime.
20              Count 4 is on or about January 17, 2017 in St. Lucie
21      and Martin Counties, in the Southern District of Florida, the
22      Defendant did knowingly and intentionally attempt to distribute
23      a controlled substance, and that substance involved is alleged
24      to have involved ten grams or more of a mixture and substance
25      containing a detectable amount of Lysergic Acid Diethlyamide,
```

1   also known as LSD, a Schedule 1 controlled substance.

2           With regard to this count, the Government would have to
3   prove the Defendant knowingly intended to commit the crime of
4   distribution of a controlled substance, in this case LSD, and
5   the Defendant's intent was strongly corroborated by his taking a
6   substantial step toward committing the crime.

7           Count 5 is regarding on or about January 17, 2017 in
8   St. Lucie and Martin Counties, in the Southern District of
9   Florida, the Defendant did knowingly carry a firearm during and
10  in relation to a drug trafficking crime, and did knowingly
11  possess a firearm in furtherance of a drug trafficking crime,
12  which is a felony prosecutable in a court of the United States.
13  This count refers to the Count 4 of the indictment.  And the
14  Government would have to prove that the Defendant knowingly
15  possessed a firearm, and that it was in furtherance of any drug
16  trafficking crime for which he could be prosecuted in a court of
17  the United States, or it was carried during and in relation to a
18  drug trafficking crime.

19          That would constitute all five counts of the
20  indictment, Your Honor.

21          THE COURT:  All right, sir.  You heard what the
22  Government said.  Is that what you understand you're pleading
23  guilty to?

24          THE DEFENDANT:  Yes, Your Honor.

25          THE COURT:  Would the Government make a representation

```
 1      concerning the facts you would be prepared to prove at trial.
 2              MS. LINEBERGER:  Your Honor, on October 11, 2016,
 3      Homeland Security Investigations and the US Postal Inspector
 4      Kevin Henry intercepted an international mail parcel shipped
 5      from Denmark addressed to the defendant's business, LeBowe, LLC
 6      at 2447 Southeast Pascal Avenue, Port St. Lucie, Florida.  A
 7      border search of the parcel revealed LSD that was hidden in some
 8      facial cream.  The LSD was tested by CBP laboratory and it did
 9      weigh approximately 5.9 grams.  And that did come from a country
10      outside of the United States.
11              That package had been tracked from an internet IP
12      address assigned to the Defendant, Ralph Sergo, who was also
13      listed as a manager of LeBowe, LLC.  He's also listed by Florida
14      DAVID records as living and registering vehicles at the address.
15              On January 17th, a federal search warrant was executed
16      on that aforementioned residence, and inside that residence,
17      agents did locate LSD in glass jars which weighed approximately
18      74.71 grams, and was tested as LSD by Customs and Border
19      Protection laboratory.  They also found a second jar of an
20      orange granular substance which CBP lab indicated was also LSD
21      and weighed approximately 72.76 grams. 10 granules weighing
22      approximately .15 grams, the total material in that orange
23      substance consisted of approximately 4,850 doses.
24              Agents found FedEx mailing bags of a dark brown
25      bark-like substance which tested positive as Dimethyltryptamine,
```

known as DMT, which is a hallucinogen and Schedule 1 controlled substance, that weighed approximately 26.76 grams. There was paraphernalia, as well as perforated sheets of paper known as blotter paper, which is used as a delivery method for LSD, as well as liquids which appeared to be an administration agent for the LSD.

Agents also discovered shipping materials which indicated that apparently the Defendant was also shipping the substance out, not just importing it.

During the execution of the search warrant, the Defendant arrived in his 2016 Honda van. He was encountered and was in possession of a loaded Smith and Wesson 38 Caliber revolver. From inside the van, agents located a shipping receipt which led them to the Post Office in Stuart, and they intercepted an outbound postal envelope which contained a substance that tested positive for LSD and weighed 74.37 grams. The material consisted of approximately 5,312 doses.

In summary, the Defendant, after waiving Miranda rights, did admit that he was exporting LSD to Mexico, and had been expecting a package from Denmark that he had not received. Agents had previously intercepted a package from Denmark that contained 898 grams of MDMA from the Defendant's bedroom, United States currency was seized, as well as numerous firearms from his bedroom and around the house in which the aforementioned LSD was found.

```
 1              The firearms were found by a nexus expert to have been
 2   made outside of Florida, and there was an RG .22 Caliber
 3   revolver that was made inside of Florida, but found to have
 4   traveled in interstate commerce.
 5              As a result of investigation, the Government seized
 6   $15,787 US currency and approximately 66.95285919 of Bitcoin.
 7   That represents the proceeds derived from violations in Counts
 8   1, 2 and 4.  The electronics seized and referenced in the plea
 9   agreement were used or intended to be used to facilitate Counts
10   1, 2 and 4, and the six firearms referenced in the plea
11   agreement were used or intended to be used to facilitate the
12   violations in Counts 3 and 5.
13              Thank you, Your Honor.
14              THE COURT:  All right.  You heard what the Government
15   said.  If this case were to go to trial, do you believe they
16   could prove what they just said?
17              THE DEFENDANT:  Yes, Your Honor.
18              THE COURT:  Is it true?
19              THE DEFENDANT:  Yes, Your Honor.
20              THE COURT:  All right.  I have here a -- I believe it's
21   a six-page document, that is pretty much verbatim what she said,
22   and then some additional things.  And on Page 5 it has I, Ralph
23   Robert James Sergo, am aware of and understand the nature of the
24   charges to which I'm pleading guilty because I've discussed the
25   charges, and what the Government prosecutor must prove to
```

```
 1    convict me, with my attorney.  I understand the United States
 2    must prove the following facts or elements, then it goes into
 3    the elements.
 4          When you signed this, did you know what you were
 5    signing?
 6          THE DEFENDANT:  Yes, Your Honor.
 7          THE COURT:  Do you believe you understood it?
 8          THE DEFENDANT:  Yes, Your Honor.
 9          THE COURT:  Did you have the opportunity to discuss it
10    with your lawyer?
11          THE DEFENDANT:  Yes, Your Honor.
12          THE COURT:  Did you discuss it with your lawyer?
13          THE DEFENDANT:  Yes.
14          THE COURT:  Mr. Meadows, do you believe that your
15    client fully understood this factual proffer at the time that he
16    executed it?
17          MR. MEADOWS:  Yes, Your Honor.
18          THE COURT:  All right.  I'll have this marked as an
19    exhibit and attached to the file.
20          Would the Government summarize the essential terms of
21    the written plea agreement, "summarize" being the operative
22    word?
23          MS. LINEBERGER:  Your Honor, the Defendant agrees to
24    plead guilty to Counts 1, 2, 3, 4 and 5 of the plea agreement.
25    He is aware that there are sentencing guidelines and that there
```

1   is no parole under the guidelines.  He has acknowledged each of
2   the sentences for each of the five counts.  He has agreed to
3   forfeiture of US currency and items used in the crime.  The
4   Government agrees that it will recommend three levels of
5   acceptance unless the Defendant violates the terms of the
6   agreement.  The Defendant agrees he will be cooperating fully
7   with the United States by providing truthful and complete
8   information and testimony, appearing at any hearings or trials
9   where needed, and will work along with agents and other law
10  enforcement officers with regard to investigating any further
11  crimes he knows about.
12          The Government agrees that if his assistance is deemed
13  to be substantial, the Government will recommend to the court a
14  downward departure to be filed prior to sentencing under section
15  5K1.1 or after sentencing via a Rule 35.  He understands that
16  the sentence is up to the Court, not to the Government.
17          He also waives his right to appeal the sentence imposed
18  and he acknowledges that he has fully discussed all matters in
19  the plea agreement and the guilty plea with his attorney, and he
20  understands the rights that he is giving up, and that this is
21  the entire agreement between the Government and the Defendant.
22          THE COURT:  All right.  You heard what the Government
23  said.  Is that your general understanding of the plea agreement?
24          THE DEFENDANT:  Yes, Your Honor.
25          THE COURT:  Okay.  Once again, I have another document.

1   This one is ten-pages long, and on the 10th page it has three
2   signatures:  That of Ms. Lineberger, that of your attorney,
3   Mr. Meadows, and what appears to be a signature above your name.
4   Is that your signature?
5           THE DEFENDANT:  Yes, Your Honor.
6           THE COURT:  Before you signed it, did you read this
7   document?
8           THE DEFENDANT:  Yes, Your Honor.
9           THE COURT:  Do you believe you understood it?
10          THE DEFENDANT:  Yes, Your Honor.
11          THE COURT:  Did you discuss it with your attorney?
12          THE DEFENDANT:  Yes.
13          THE COURT:  Mr. Meadows, do you believe that your
14  client fully understand this agreement at the time he executed
15  it?
16          MR. MEADOWS:  Yes, Your Honor.
17          THE COURT:  You do understand that any recommendations
18  that are made to me are just that, recommendations, and I don't
19  have to accept them?
20          THE DEFENDANT:  Yes.
21          THE COURT:  Other than what's contained in these ten
22  pages, is there any other or different promises or
23  recommendations or assurances made to you of any kind in an
24  effort to induce you to enter a plea of guilty?
25          THE DEFENDANT:  No.

1   THE COURT:  Has anyone threatened you in any way to
2   force you to plead guilty, threatened or coerced you?
3   THE DEFENDANT:  No, Your Honor.
4   THE COURT:  All right.  I'll have this also marked as
5   an exhibit.
6       Do you understand that if I don't accept any sentencing
7   recommendations, you will still be bound by your plea and have
8   no right to withdraw it?
9   THE DEFENDANT:  Yes, Your Honor.
10  THE COURT:  Do you understand if the sentence is more
11  severe than you expected it to be, you will still be bound by
12  your plea and have no right to withdraw it?
13  THE DEFENDANT:  Yes, Your Honor.
14  THE COURT:  How do you now plead to Counts 1, 2, 3, 4
15  and 5?
16  MS. LINEBERGER:  Yes, Your Honor.
17  THE COURT:  Counts 1, 2, 3, 4 and 5 of the indictment
18  pending against you?  Guilty or not guilty?
19  THE DEFENDANT:  I plead guilty.
20  THE COURT:  It is the finding of this Court in the case
21  of the United States versus Ralph Robert James Sergo that the
22  Defendant is fully competent and capable of entering an informed
23  plea.  That his plea of guilty is a knowing and voluntary plea
24  supported by an independent basis in fact containing each of the
25  essential elements of the offenses.  His pleas are therefore

```
 1    accepted, he is now adjudged guilty of Counts 1, 2, 3, 4 and 5
 2    of the indictment pending against him.
 3              A written Presentence Report will be prepared by the
 4    Probation Office to assist me in sentencing you.  You will be
 5    asked to give information for the report and your attorney may
 6    be present if you so desire.  I will permit you and your counsel
 7    to read the Presentence Report before the sentencing hearing,
 8    and you will be given an opportunity to speak at that hearing
 9    which I'm hereby scheduling for Monday, October 2, 2017 at 1:30
10    p.m. in this courthouse.
11              Counsel is advised to comply with administrative orders
12    regarding implementation of sentencing procedures, particularly
13    time periods within those orders.
14              I refer you to the Probation Office for a Presentence
15    Investigation and Report.
16              Counsel, if you have any specific requests for
17    treatment modalities or place of incarceration, please raise it
18    during the Presentence Investigation Report.  If it's brought up
19    for the first time at the time of sentencing, I will not
20    consider it.  I don't want to enter into a lifelong
21    correspondence with the Bureau of Prisons as to why I can't send
22    him to the prison for criminally insane women that you've asked
23    me to send him to, so please ask before so the Probation Office
24    can check it out.
25              Anything else?  We'll be in recess on this matter.
```

1            MS. LINEBERGER:  Thank you, Your Honor.

2            MR. MEADOWS:  Thank you, Your Honor.

3            (PROCEEDINGS CONCLUDED)
                      * * * * *

4
                     **C E R T I F I C A T E**
5     I certify that the foregoing is a correct transcript from the
      record of proceedings in the above-entitled matter.
6

7     <u>1-15-2018      </u>          <u>/s/ Dawn M. Savino  </u>
      Date                      DAWN M. SAVINO, RPR

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**