UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 17-14009-cr-MARTINEZ

UNITED STATES OF AMERICA,

    Plaintiff,
v.

RALPH ROBERT JAMES SERGO,

    Defendant.
    _____/

## RENEWED MOTION FOR REDUCTION OF SENTENCE AND/OR COMPASSIONATE RELEASE

Defendant, RALPH ROBERT JAMES SERGO, through undersigned counsel, and pursuant to 18 U.S.C. § 3582, hereby renews his Motion to this Honorable Court to enter an order reducing his sentence and/or releasing him. In support of this request, Sergo submits the following:

1. On April 28, 2020, Defendant filed a Motion for Reduction of Sentence and/or Compassionate Release based upon his suffering from Asthma and thus being particularly susceptible to catching and suffering very adverse consequences from a Covid infection, especially having been designated to a BOP facility with a high infection rate. [DE 71].

2. On May 5, 2020, the Government objected to the requested relief, arguing in part that the Defendant had not waited the mandatory thirty (30) days

from the date he requested administrative relief from the warden of the BOP facility. [DE 73]. The Government also objected that the Defendant did not warrant the relief on the merits.

3. On May 7, 2020, the Defendant replied that recent case law in the Federal system was split on whether the thirty (30) days was mandatory and jurisdictional or not, and otherwise requested the Court to stay ruling pending the running of the thirty (30) days. [DE 74].

4. On May 19, 2020, this Court denied relief, ruling in essence that the thirty (30) day waiting period was mandatory and further the Court declined to stay the ruling for the thirty (30) days to sunset. [DE 76]. The Court did not, however, rule on the merits of the requested relief having apparently determined that the Court did not have jurisdiction over the issue.

5. As of today's date, more than thirty (30) days have elapsed since the Defendant made an administrative request for relief from the BOP Warden. In fact, the Government acknowledged in its Response that the Defendant made his verbal request on April 21, 2020. Moreover, Undersigned Counsel emailed the Warden at the facility where the Defendant is housed on April 27, 2020 further seeking administrative relief. (*See* Exhibit 1, attached hereto). As of today's date, again more than thirty (30) days from both requests for administrative relief, the BOP has failed to respond and further failed to provide the Defendant relief.

6. Thus, according to applicable statutory and case law, the Defendant has exhausted his administrative remedies and this Court has jurisdiction over the merits of the motion.

7. Defendant would further reiterate and incorporate herein the arguments and assertions made on the merits of his request for compassionate release from his initial filing (and his Reply to the Government's Response), to wit:

Sergo is incarcerated in a BOP facility and has been designated to be moved to a facility with one of the highest Covid infections rates in the BOP system. He suffers from asthma which makes him highly susceptible to catching the virus and at greater risk of severe deterioration in his health as a result. His continuing to be housed in a BOP facility, or worse, being designated to a hot zone facility would be unreasonable and could lead to tragic consequences for a young father who fully cooperated with the government to resolve his case but who never obtained the full benefit of his efforts.

Sergo pleaded guilty to one count of attempt to import LSD into the United States in violation of 21 U.S.C. § 952 and § 963 (Count 1); one count of possession with intent to manufacture more than 10 grams of LSD (Count 2); carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count 3); one count attempt to distribute LSD in violation of 21 U.S.C. 841(a)(1) (Count 4); and one count of carrying a firearm during and in relation to a

drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(C)(i) (Count 5). The investigation began with agents' interception of a package from Denmark addressed to Sergo. The package contained LSD concealed among skin creams and oils. Approximately three months later a search warrant was executed at Sergo's home where agents also discovered LSD and packaging that indicated Sergo was shipping it out. When Sergo arrived at the home agents found a gun in his vehicle. Additional guns were found inside the home.

On January 18, 2018, Sergo appeared before this court for sentencing. While his total offense level was calculated at 27 (70 to 87 months), Sergo faced a minimum mandatory sentence of five years as to Count 1, ten years as to Counts 2 and 4, and consecutive sentences of five and 25 years as to Counts 3 and 5 respectively. He has 0 criminal history points.

Pursuant to the government's § 5K1.1 motion, this Court imposed a sentence of 60 months on Counts 1, 2 and 4, 30 months on Count 3 to run consecutively to the 60 month term, and 30 months on Count 5 to run consecutively to Count 3 for a total of 120 months. However, Sergo's cooperation was quite substantial and warranted further relief, especially since by information and belief the Government benefited from the information it learned from him about the "dark web" even after his sentencing. Despite assurances that he would eventually see a Rule 35 motion from the government seeking a further reduction and admissions made by the

government that his efforts would continue to ripen, one has never been filed even though Sergo's family and lawyers made numerous requests to the government to file it. Sergo is scheduled to be released on September 4, 2025.

After Sergo was sentenced, Congress passed the First Step Act. One substantial change is a revision to § 924 (c)(1)( C) which provides for a minimum mandatory sentence of 5 years for the first § 924 charge in the indictment and a consecutive term of at least 25 years for a second count. Under the revised version, the 25 years term is only triggered if the defendant has a *prior* conviction under § 924 (c). Otherwise, the defendant faces a consecutive five year minimum mandatory sentence for the second count. In other words, under the new law Sergo would only have faced 20 years minimum incarceration under his plea. His cooperation, therefore, would have brought his sentence substantially lower than what he received with cooperation under the old law. (Sergo was looking at a 40 year minimum starting point and this Court reduced his total sentence to 10 years, a 75% reduction).

The landscape has also changed in another significant way since Sergo was sentenced. On March 13, 2020, the President declared a national emergency due to the spread of the novel coronavirus. According to the CDC, there are 895,766 cases in the United States as of April 24, 2020. Of those, nearly 30,000 are in Florida. https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html. Also,

according to the CDC, "[p]eople with moderate to severe asthma may be at higher risk of getting very sick from COVID-1."[11] Sergo has long suffered from asthma, requiring treatment and putting him at greater risk of severe illness. *See* Exhibit A. He is currently housed at FCI Tallahassee awaiting transfer to Yazoo, Mississippi, where he has been designated. According to data from the BOP, Yazoo has one of the highest rates of Covid infection in the BOP system. It is for these reasons Sergo now asks this Court to reduce his sentence and release him.

Should this Court grant this request Sergo will be going home to his wife, Jasmine, and two young (four and two year sold) children who reside in Jensen Beach, a town in Martin County, Florida. (Jasmine has written a letter to this Court about this request. A copy is attached as Exhibit B). Sergo's parents, Ralph and Dorothy (Dena) Sergo, also reside in Jensen Beach. Sergo's in-laws, Jasmine's parents, also live in the area. If released, Sergo would be able to help his parents manage and maintain their residential rental properties. Florida remains under a stay-at-home order with which Sergo would willfully comply. Undoubtedly, Sergo would be much safer at home.

## MEMORANDUM OF LAW

Prior to December 2018, Title 18 U.S.C.A. § 3582 read, in relevant part:

---

[11] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html

> (c) Modification of an imposed term of imprisonment. The court may not modify a term of imprisonment once it has been imposed except that
>> (1) in any case--
>> (A) the court, upon motion of the Director of the Bureau of Prisons, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>>> (i) extraordinary and compelling reasons warrant such a reduction

However, since the enactment of the First Step Act, § 3582 now directs:

> (1) in any case--
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>> (i) extraordinary and compelling reasons warrant such a reduction

18 U.S.C.A. § 3582. With these changes, courts do not have to rely on a motion from the Director of BOP to act. *United States v. Nieves Suarez*, 18-20175 (S.D. Fla. Apr. 20, 2020).[2] They may reduce a prisoner's sentence upon his motion. Certainly, the risk of infection of the novel, highly contagious, and often fatal

---

[2] Sergo has made a request for release directly to the Warden.

coronavirus presents an extraordinary and compelling reason to reduce a term of imprisonment. *Id*.

As this Court is aware, the United States has become the epicenter of the COVID-19 pandemic. According to the CDC and top health officials, the disease is especially contagious and affects those with underlying health conditions more severely than others. One underlying condition that puts a person at greater risk of serious illness or death is a respiratory condition such as asthma. Sergo has suffered from severe asthma for years. Prior to his arrest he was regularly prescribed Albuteral inhaler to control this ailment. Since his incarceration he has sought treatment for this respiratory illness. It has been prescribed to since he has been in custody but his more recent requests for an inhaler have been denied.

Confinement in close quarters such as a prison facility make someone like Sergo particularly vulnerable to contracting COVID-19. The coronavirus spreads from person to person through respiratory droplets. The CDC recommends that anyone in a confined space use a face mask because evidence shows *asymptomatic* individuals are largely responsible for spreading the virus:

> CDC continues to study the spread and effects of the novel coronavirus across the United States. We now know from recent studies that a significant portion of individuals with coronavirus lack symptoms ("asymptomatic") and that even those who eventually develop symptoms ("pre-symptomatic") can transmit the virus to others before showing symptoms. This means that the virus can spread between people interacting in close proximity—for example, speaking, coughing, or sneezing—even if those people are not exhibiting

> symptoms. In light of this new evidence, CDC recommends wearing cloth face coverings in public settings where other social distancing measures are difficult to maintain (e.g., grocery stores and pharmacies) especially in areas of significant community-based transmission.

https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/cloth-face-cover.html. Recent testing at state facilities revealed that more than 90% of the inmates who tested positive for the coronavirus exhibited no symptoms. https://www.google.com/url?sa=t&rct=j&q=&esrc=s&source=web&cd=&cad=rja&uact=8&ved=2ahUKEwjcsozPuNXpAhWtmOAKHcZHAssQFjAHegQICRAB&url=https%3A%2F%2Fwww.yazooherald.net%2Fnews%2Finmate-dies-covid-19-yazoo-federal-prison&usg=AOvVaw3jxq1ZvThieJs1PsKnqqDf [i]

The CDC has determined that social distancing (i.e. keeping at least 6 feet between people) is the "best tool" available to limit the spread of the virus. Although the BOP has announced that it is following CDC guidelines, true distancing of inmates is highly improbable. *United States v. Williams*, 3:04CR95/MCR, 2020 WL 1751545, at *2 (N.D. Fla. Apr. 1, 2020)("Unfortunately, in the context of institutional confinement, social distancing can be nearly impossible to implement and follow, given the large numbers of inmates held together in crowded, closed facilities. In light of this reality, courts around the country have recognized that the risk of COVID-19 to people held in jails and prisons 'is significantly higher than in the community, both in terms of risk of transmission, exposure, and harm to individuals who become infected'."). Even if inmates are locked in their cells, such separation may still be ineffective. As we learn more details about COVID-19,

researchers have considered that A/C units may be responsible for the spread of the virus to people who are more than six feet apart in buildings with no outside ventilation.  https://wwwnc.cdc.gov/eid/article/26/7/20-0764_article  Should Sergo contract COVID-19, he is statistically more likely to suffer severe disease or death because he is asthmatic.

Under the relevant Sentencing Guidelines policy statement, the Court "may reduce a term of imprisonment ... if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable, the court determines that ... extraordinary and compelling reasons warrant a reduction." U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018).  In addition, § 1B1.13 directs that the Court should only reduce a sentence if the "defendant is not a danger to the safety of any other person or to the community."  When these factors are applied, it is clear Sergo qualifies for a reduction.

Sergo initially received a sentence of 120 months.  That is *10 years* for a first time drug offender.  Under the First Step Act, a second § 924( c) charge does not trigger a second, consecutive, 25 year minimum mandatory sentence unless the defendant has a prior § 924( c) conviction.  Sergo does not.  Thus, if sentenced today Sergo would have been facing a second 5 year term rather than 25 year term.  This Court reduced the 25 year term to 30 months, a 90% reduction.  If the same math applies, this Court may very well have reduced Sergo's sentence on Count 5 to 6

months. In other words, Sergo may have received 36 months, instead of 60, for possessing the guns that were not used or displayed during the course of the drug offenses.

While Sergo does not minimize his conduct, he points out the disparity between offenders sentenced before the First Step Act and those sentenced after its enactment. His starting point would have been lower and the impact of his cooperation may very well have reduced his sentence even more. This is especially significant in light of the fact Sergo never received the full benefit of that cooperation. He began cooperating with law enforcement immediately upon his arrest. That cooperation continued through his plea and, to Sergo's knowledge, has resulted in a number of arrests. The government, however, never followed through with a Rule 35 motion that could send Sergo home.

This Court may, nevertheless, consider that Sergo took this step under § 3553. *United States v. Robinson*, 741 F.3d 588 (5th Cir. 2014). The Court in *Robinson* held:

> We now join our sister circuits in expressly holding that a sentencing court has the power to consider a defendant's cooperation under §3553(a), irrespective of whether the Government files a §5K1.1 motion. We further join our sister circuits in holding that a sentencing court's failure to recognize its discretion to consider a defendant's cooperation under § 3553(a)(1) is a significant procedural error.

In explaining the reasoning for its holding the *Robinson* court noted the following "persuasive reasons for adopting this rule:"

> (1) nothing in the text of § 3553(a) suggests that a § 5K1.1 motion should be the exclusive means for considering cooperation. Section 3553(a)(1) is a broadly worded provision guiding the sentencing court in its exercise of discretion. *See Gall,* 552 U.S. at 49 n. 6, 128 S.Ct. 586. Indeed, § 3553(a)(1) "contains no express limitations as to what 'history and characteristics of the defendant' are relevant." *United States v. Fernandez,* 443 F.3d 19, 33 (2d Cir.2006);
>
> (2) this Court has presumed that a sentencing court may consider evidence of cooperation as part of the mandated consideration of § 3553(a) factors—and, in particular, § 3553(a)(1)—but that it retains discretion as to whether and what weight to give that cooperation evidence. *See United States v. Fraga*, 704 F.3d 432, 440 (5th Cir.2013) ("No §3553(a) factor requires the sentencing judge to take such cooperation into account, and we cannot conclude that the sentencing judge abused her discretion by considering the testimony but ultimately declining to place significant weight on that cooperation." (footnote omitted)). This approach is consistent with the Second Circuit's observation that §3553(a)(1) is a "sweeping provision [that] presumably includes the history of a defendant's cooperation and characteristics evidenced by cooperation, such as remorse or rehabilitation." *Fernandez*, 443 F.3d at 33;
>
> (3) every other circuit that has examined this issue has expressly stated that a court may consider evidence of cooperation under §3553(a)(1) even in the absence of a § 5K1.1 motion. (citations omitted), and
>
> (4) permitting a Sentencing Guideline rule regarding departures from the guidelines to preclude consideration of factors relevant to variances from the guidelines would conflate two distinct categories under post-*Booker* sentencing law … We now hold that a court may consider evidence of cooperation under §3553(a)(1) even in the absence of a § 5K1.1 motion.

Sergo's actions demonstrate he is remorseful and understands the error of his ways. Certainly, this is something the Court may and should consider when deciding if a reduction is appropriate.

Finally, Sergo is not and will not be a danger to the community should he be released to his wife. He is 26 years old with no prior criminal history. He has two young children and is desperate to prove to them and everyone that he is a great father. Permitting him to be released to his home with his wife and children will not put anyone at risk. Rather, it will keep Sergo safe.

WHEREFORE, Sergo respectfully requests this Court grant the relief requested herein.

Respectfully submitted by,

JASON M. WANDNER, P.A.
*Attorney for the Defendant*
100 N. Biscayne Boulevard
Suite 1607
Miami, Florida 33132
Telephone: (305) 868-1655
Facsimile: (305) 503-7480
E-mail: jason@wandnerlaw.com

By: _____/s/_____
JASON M. WANDNER, ESQUIRE
Florida Bar No.: 114960

**CERTIFICATE OF SERVICE**

IT IS HEREBY CERTIFIED that a true and correct copy of the foregoing document was filed with the Clerk CMF/E-Fling and served on counsel of record on this 27th day of May, 2020.

---

[i] Please note this is an updated link from the Initial Motion for Reduction of Sentence And/or Compassionate Relief. [D.E. 71].